IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DANIEL A. FISHER | § | |
| | § | |
| | § | |
| v. | § | No. 3:10-CV-925-D |
| | § | (No. 3:04-CR-172-D) |
| | § | |
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| | § | Referred to U.S. Magistrate Judge |

## FINDINGS AND RECOMMENDATION

Daniel A. Fisher, a federal prisoner, has filed a motion to correct, vacate, or set aside his sentence pursuant to 28 U.S.C. § 2255. For the reasons stated herein, the motion should be dismissed.

## I. BACKGROUND

A jury convicted petitioner on multiple counts of aiding and assisting in the preparation of false tax returns, perjury, and making a false statement in connection with a loan application. Punishment was assessed at a total of 235 months confinement, followed by supervised release for a period of five years, and a $1 million fine. His conviction was affirmed on direct appeal. *United States v. Fisher*, 236 F. App'x. 54 (5th Cir. 2007) ("*Fisher I*").

After his conviction became final, Fisher continued to file *pro se* pleadings in the criminal case. On May 19, 2008, he filed a Verified Motion to Disqualify the Office of Opposing Counsel, Request for Sanctions, and Other Appropriate Relief ("Motion to Disqualify"). The court denied his motion, and Fisher appealed.

While Fisher's second appeal was pending, he filed a motion under 28 U.S.C. § 2255. The court questioned whether Fisher's § 2255 petition was untimely and should be dismissed on limitations grounds. Fisher proffered various reasons for his untimely filing, but each was rejected by the court and his § 2255 petition was summarily dismissed.

Nearly two years after both Fisher's filing of his second appeal and this court's dismissal of his § 2255 petition, the Fifth Circuit filed its opinion and judgment. *United States v. Fisher*, 372 F. App'x. 526 (5th Cir. 2010) ("*Fisher II*"). The Fifth Circuit opined that Fisher's Motion to Disqualify should have been construed as a motion under § 2255 and remanded for this court to treat it as such.

Pursuant to the Fifth Circuit's mandate, the instant action was opened, and Fisher's Motion to Disqualify was docketed as a motion under § 2255. Thereafter, Fisher was instructed to "file a statement identifying each ground raised in his May 19, 2008, motion on which he claims to be entitled to relief pursuant to 28 U.S.C. § 2255." Since then, Fisher has filed an amended petition, several supplemental memorandums, and the government has responded. The court now considers the merit of Fisher's petition.

## II. DISCUSSION

In his 38-page amended petition and supplemental memorandums, Fisher set forth 13 grounds for habeas relief. His contentions each fall within one of the following broad categories: (1) the grand jury and district court lacked jurisdiction to hear this case; (2) his conviction was the result of prosecutorial misconduct; (3) he received ineffective assistance of counsel at trial and on appeal; and (4) he is actually innocent.

### A. STATUTE OF LIMITATIONS

Section 2255 proceedings are governed by a one-year statute of limitations. *See*

ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT, Pub.L. 104-132, 110 Stat. 1214 (1996), *codified at* 28 U.S.C. § 2255(f). Generally, the limitations period runs from the date on which the judgment of conviction becomes final. *Id.* Where the Petitioner does not file a petition for writ of certiorari in the United States Supreme Court, the judgment becomes final 90-days after appellate review is concluded. *See United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008) (citing *Clay v. United States*, 537 U.S. 522, 532 (2003)).

Fisher's direct appeal was decided on June 6, 2007, and he did not file a petition for writ of certiorari in the United States Supreme Court. "Therefore, the judgment became final for limitations purposes on September 4, 2007, when the deadline for seeking certiorari review expired." *United States v. Fisher*, No. 3:08-CV-1609-D, 2008 WL 5061670 (N.D. Tex. Oct. 15), *adopted* (Nov. 25, 2008) (Fitzwater, C.J.). Fisher's deadline to file claims under § 2255, therefore, was September 4, 2008.

The Motion to Disqualify, which serves as the basis for this suit, was originally filed approximately four months prior to Fisher's deadline to file claims under § 2255. Fisher's subsequent amendment and supplemental memorandums, however, were filed nearly two years after the deadline. Although the court ordered Fisher to "identify[] each ground raised in his May 19, 2008, motion," that order was not an invitation to add new claims or a pathway through which he could circumvent the one year limitations period. *See generally United States v. Gonzalez*, 592 F.3d 675, 678-80 (5th Cir. 2009), *cert. denied*, 131 S. Ct. 231 (2010). Claims added after § 2255's limitations period expires are dismissed unless they relate back to the original petition. *Id.* at 679. Such claims do not automatically relate back merely because they arose out of the same trial and conviction. *Mayle v. Felix*, 545 U.S. 644, 650 (2005). Nor do claims automatically relate back

merely because they allege violations of the same constitutional provisions. *Gonzalez*, 592 F.3d at 680. Instead, the court must decide if each new claim asserts "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth"; each claim that does not withstand this scrutiny is time-barred. *Id.* (quoting *Mayle*, 545 U.S. at 650).

In his Motion to Disqualify, Fisher claims that the prosecutors:

> (a) filed numerous false and misleading affidavits in order to establish venue in this case; and b) deceived this Court and the trial jury as to the content, relevance, and materiality of Government exhibits; suborned perjury as to facts necessary to establish guilt on specific counts, deliberately hidden exculpatory evidence (as to "loss"), and inserted false and inflammatory opinion material within the body of a Government Exhibit certified by the lending institution as correct and later distributed to the jury in deliberations.

Doc. 1 at 7-8.

With respect to contention (a), Fisher specifically alleges that the "prosecutor had direct knowledge that [the] correct venue was in the Eastern District of Texas." Doc. 1 at 10. Fisher provides no specific factual basis for this assertion in his Motion to Disqualify. Regarding contention (b), Fisher alleges that "Prosecutor Gill caused the distribution of unauthorized materials to the jury via inclusion of highly prejudicial investigator's notes within the certified Wells Fargo Mortgage loan application documents (original Exhibit 400), and further caused the distribution to the jury of Exhibit 408 which had not been admitted into evidence." Doc. 1 at 10. Fisher further argued that the prosecutors were guilty of misconduct because they hid "the fact that the Government had admitted in the co-defendant's case that no risk existed to the lending institution." Doc. 1 at 10. These are the only specific facts given by Fisher in support of his Motion to Disqualify.

Several of Fisher's 13 grounds for habeas relief were not raised, or even hinted at, in the Motion to Disqualify. In Fisher's Motion to Disqualify he does not argue: the materiality of his tax

returns (Ground No. 3); tampering with exhibit 366 (Ground No. 6); false and misleading testimony by Attorney Jennifer Brown (Ground No. 8); ineffective assistance of trial and appellate counsel (Ground Nos. 9-11); the cumulative effect of trial errors undermined the trial (Ground No. 12); or actual innocence (Ground No. 13)[1]. *Compare* Doc. 1 *with* Doc. 5-1 and Doc. 30 (actual innocence claim). None of these grounds for relief relate back to the original Motion to Disqualify because they rely on "facts that differ in both time and type from those the original pleading set forth." *Gonzalez*, 592 F.3d at 680 (quoting *Mayle*, 545 U.S. at 650). Consequently, Ground Nos. 3, 6, and 8-13, should be dismissed as time-barred.

### B. PROCEDURAL BAR

For a collateral attack under § 2255, "a distinction is drawn between constitutional or jurisdictional errors on the one hand, and mere errors of law on the other." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A 1981); *See United States v. Drobny*, 955 F.2d 990, 994-95 (5th Cir. 1992). This is because, "[a]fter conviction and exhaustion or waiver of any right to appeal, we are entitled to presume that [the defendant] stands fairly and finally convicted." *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc) (internal quotation and citation omitted). Accordingly, "[a] defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude, and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *Id.* at 232 (citations omitted). "This cause and actual prejudice standard presents 'a

---

[1] Claims of actual innocence do not preclude the dismissal of a §2255 motion that is untimely filed because "a petitioner's claims of actual innocence are [not] relevant to the timeliness of his petition." *United States v. Riggs*, 314 F.3d 796, 800 n.9 (5th Cir. 2002) (internal quotation and citations omitted).

significantly higher hurdle' than the 'plain error' standard that we apply on direct appeal." *Id.* To satisfy the "cause" standard, a petitioner must "show that 'some objective factor external to the defense' prevented him from raising on direct appeal the claim he now advances." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (citations omitted). Other types of error may not be raised in a collateral attack, unless the defendant demonstrates that "the error could not have been raised on direct appeal, and if condoned, would result in a complete miscarriage of justice." *Shaid*, 937 F.2d at 232 n.7; *See also Capua*, 656 F.2d at 1037.

Fisher failed to raise in his direct appeal any of his allegations of *Brady* violations; use of perjured testimony, false evidence, and improper exhibits; or other prosecutorial misconduct. Fisher claims that the prosecutor's misconduct was not challenged on direct appeal because of inadequate representation by his appellate attorney. Doc. 5-1 at 18-19, 23. Ineffective assistance of counsel, in the constitutional sense, is an objective factor that can constitute *cause*. *Guerra*, 94 F.3d at 993. Therefore, for the limited purpose of determining whether Fisher has offered sufficient *cause* for failing to raise his prosecutorial misconduct claims on direct appeal, the court must determine whether Fisher's appellate counsel performed below constitutional standards when he chose not to raise Fisher's prosecutorial misconduct claims. Thus, if Fisher's ineffective assistance of counsel claim fails, so too will his showing of *cause*.

### 1. Was Fisher's Appellate Counsel Ineffective?

To demonstrate ineffective assistance of appellate counsel, Fisher must satisfy the requirements of *Strickland v. Washington*, by showing that his appellate counsel's performance fell below an objective standard of reasonable competence and that he was prejudiced by counsel's deficient performance. 466 U.S. 668 (1984); *see also Smith v. Robbins*, 528 U.S. 259, 288–89

(2000). A failure to establish either deficient performance or prejudice defeats the claim.

In reviewing counsel's performance, this court must be "highly deferential," making every effort "to eliminate the distorting effects of hindsight," and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. An appellate attorney need not, and should not, raise every nonfrivolous claim, but rather should "winnow out weaker arguments" to maximize the likelihood of success on appeal. *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983); *see also Robbins*, 528 U.S. at 288 (citing *Jones*). Although this reality makes it "difficult to demonstrate that counsel was incompetent," a prisoner may still assert a *Strickland* claim based on counsel's failure to raise a particular appeals claim, but "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Robbins*, 528 U.S. at 288 (quotation and citation omitted). The court now compares the claims Fisher's attorney raised on direct appeal with the prosecutorial misconduct claims he now alleges, to determine whether Fisher has overcome the presumption that his counsel was effective.

a. <u>Arguments raised on appeal</u>

Fisher's counsel argued four points of error on appeal: (1) the testimony of expert witness Sandy Abalos was erroneously admitted, in violation of Fed. R. Evid. 704; (2) the evidence was insufficient to support Fisher's conviction for making a false declaration before a court; (3) the finding of tax loss in excess of $7 million was clear error; and (4) the district court's imposition of a $1 million fine was unreasonable. *Fisher*, 236 F. App'x. at 56. The appellate court found that Fisher's first alleged point of error was well taken, and concluded that the district court had erred in allowing the testimony of expert witness Sandy Abalos. However, this error was found to be

harmless. Each of Fisher's other three points of error were arguable, but the court found that the evidence and testimony adduced at trial supported the conviction, findings of the jury, and the imposed fine amount, and affirmed.

### b. Arguments not raised on appeal

Fisher sets forth in Ground Nos. 4, 5, and 7, several instances of conduct that allegedly constitute prosecutorial misconduct. He claims that: (1) prosecutors suppressed evidence in violation of *Brady*; (2) prosecutors placed inflammatory IRS interview notes inside exhibit 400, which was supposed to be certified bank documents; and (3) prosecutors submitted Exhibit 408 to the jury even though it was not admitted during the trial. Fisher's three claims of prosecutorial misconduct are not compelling.

Fisher argues that under 18 U.S.C. § 1344, the government had to prove that Wells Fargo Bank was exposed to a risk of loss. He claims that prosecutors suppressed the plea agreement of Brenda Meyers-Fisher, a co-defendant, because the document contained a stipulation by the government that the loan he sought was to be secured by collateral in excess of the proposed loan amount, and thus, Wells Fargo Bank was never exposed to a risk of loss. Doc. 5-1 at 16-19.

Under *Brady*, the prosecution is not permitted to suppress evidence favorable to the accused. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To establish a *Brady* violation on direct appeal, Fisher would have been required to establish that "(1) the prosecution withheld evidence, (2) the evidence was favorable to the petitioner, and (3) the evidence was material." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

However, a defendant cannot prevail on a claim that evidence was suppressed if he either knew or should have known about the essential facts permitting him to take advantage of any exculpatory evidence. *Lawrence v. Lensing*, 42 F.3d 255, 257-58 (5th Cir. 1994). For the reasons that follow, Fisher's *Brady* claim certainly would have failed on appeal.

Fisher claims that the Prosecutors sealed Brenda Meyers-Fisher's plea agreement and placed it on a secret docket, and thereby suppressed the evidence contained therein. However, Meyers-Fisher's plea agreement and the attendant factual resume are both on the criminal case's docket. The documents are not currently sealed and there is no indication that they were sealed in the past. Accordingly, the court can find no evidence that these documents were suppressed.

Furthermore, the court has examined the relevant documents identified by Fisher and finds that in the factual resume that accompanied Meyers-Fisher's plea agreement, the government "stipulate[d] that Wells Fargo Bank did not fund the $300,000 loan and **no actual loss was suffered** in connection with Meyers-Fisher's conduct in this case." Factual Resume at 3, *United States v. Meyers-Fisher*, No. 3:04-CR-172 (N.D. Tex. July 2, 2004) (emphasis added). Even if the government had suppressed this stipulation, it would not be a *Brady* violation because it is immaterial to Fisher's § 1344 charge.

In this circuit, "to prove bank fraud, the government must demonstrate that the defendants placed the financial institution at risk of civil liability or financial loss and that the bank was insured by the Federal Deposit Insurance Corporation." *United States v. McCauley*, 253 F.3d 815, 820 (5th Cir. 2001). "It is not necessary, however, for the government to prove that banks actually suffered civil liability or financial loss in order to obtain bank fraud convictions." *Id.* (citing *United States v. Waldrip*, 981 F.2d 799, 806 (5th Cir. 1993)). Thus, a § 1344 prosecution does not hinge on a

showing of *actual loss*; rather, the government need only demonstrate a *risk of loss*.

Here, the government merely stipulated that "no actual loss was suffered," but made no such stipulation regarding the bank's *risk of loss*. Although Fisher claims that a sufficiently collateralized loan does not expose the lending institution to a risk of loss, the Fifth Circuit has held that a fraudulent loan transaction exposes financial institutions to risk of loss even when the loan is secured. *See United States v. Saks*, 964 F.2d 1514, 1519 (5th Cir. 1992). Consequently, the government's actual loss stipulation is immaterial because it would not have changed the result of the proceeding. Thus, this argument likely would have failed on direct appeal.

Next Fisher argues that prosecutors tendered exhibit 400 to the jury without removing two agent reports that were inadvertently included in the exhibit. Doc. 5-1 at 19-20. The record indicates that when the government offered exhibit 400, Fisher's counsel made a timely objection, stating that exhibit 400 contained two agent reports within its 180-plus pages. (Vol. II Trial Tr. at 57). In response, the government stated that it had inadvertently left the agent reports in the exhibit, and that it would remove those reports prior to publishing it to the jury. The government concedes that it has been unable to locate the original exhibit 400, but argues that there is absolutely no evidence to indicate that it did not follow through with its representation to the Court. This court has examined the trial transcripts and can find no evidence that the complained of documents were published to the jury, and Plaintiff has provided no citation to the record or other proof to substantiate his claim. Plaintiff's wholly unsubstantiated and conclusory allegations are insufficient to state a constitutional claim, and would have failed on appeal. *See United States v. Jones*, 614 F.2d 80, 81 (5th Cir. 1980).

With respect to Fisher's claim regarding exhibit 408, there is no mention in the trial record of exhibit 408 being offered or admitted into evidence. Again, Fisher's conclusory allegation is

insufficient to establish actual prejudice when there is absolutely no evidence that the government offered, admitted, or published exhibit 408 to the jury. *Id.*

### c. Fisher's instant claims are not "clearly stronger"

Similar to the outcomes on the issues his appellate attorney raised on direct appeal, Fisher's three claims of prosecutorial misconduct would likely have also failed on direct appeal for the reasons discussed above; thus, these claims are not "clearly stronger than those presented" by his appellate attorney on direct appeal. *See Robbins*, 528 U.S. at 288. Consequently, Fisher has failed to overcome the presumption of effective assistance of counsel, and this court presumes his appellate attorney rendered effective assistance of counsel. *Id.*

Because the court has determined that Fisher's appellate attorney was effective, Fisher has failed to show *cause* for his procedural default, and his prosecutorial misconduct claims (Ground Nos. 4, 5, and 7) should be dismissed as procedurally barred. *See Shaid*, 937 F.2d at 231-32.

### C. VENUE CLAIMS[2]

In both Ground Nos. 1 and 2, Fisher alleges that his convictions should be dismissed because the Dallas Division of the Northern District of Texas was an improper venue for his trial. Doc. 5-1 at 5-12. He specifically argues that government attorneys used false and misleading evidence to establish venue. The government argues that Fisher did not challenge venue in the criminal proceedings, either in the district court prior to trial or in his direct appeal, and thus any venue claims

---

[2] In his briefing, Fisher uses the words "venue" and "jurisdiction" interchangeably. These two concepts are quite different. "Jurisdiction" concerns a federal court's power to adjudicate, while "venue" merely concerns the place where that authority may be exercised. *See Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167–168 (1939). In his Motion to Disqualify, Fisher argues that venue was improper because the alleged misconduct took place within the territorial reach of the Eastern District of Texas, but does not argue jurisdiction. Accordingly, to the extent that Fisher now seeks to challenge jurisdiction, such claims are time barred. *See Gonzalez*, 592 F.3d at 680.

were waived. Doc. 47 at 24. In response, Fisher claims that the venue issues "were raised . . . [on] appeal, but were not narrowly presented as they were in [Fisher's §2255 application]." Doc. 50 at 2. Having reviewed the appellate briefs in *Fisher I*, the court finds Fisher's claim to be disingenuous at best. The venue issues raised in Fisher's petition were not argued in his direct appeal; in fact, the word "venue" is not used a single time in either his initial appellate brief or reply brief. *See* 2006 WL 4725607 (appellant's brief) and 2007 WL 2426268 (appellant's reply brief). Consequently, this court finds that Fisher has waived any objections to venue, and such claims (Ground Nos. 1 and 2) should be dismissed. *See United States v. Delgado-Nunez*, 295 F.3d 494, 497 (5th Cir. 2002) ("'[V]enue objections are waived unless made prior to trial' in all cases except 'when an indictment contains a proper allegation of venue so that the defendant has no notice of a defect of venue until the government rests its case." (emphasis omitted)).

## III. RECOMMENDATION

It plainly appears from the face of the motion and the record of prior proceedings that each of Fisher's claims are either time-barred, procedurally barred, or have been waived. Accordingly, Fisher's motion to correct, vacate, or set aside his sentences should be dismissed.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F. 3d 1415, 1417 (5th Cir. 1996).

Dated: June 7, 2012.

_____
E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**